# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN CORTEZ, | Case No. EDCV 07-0788-JTL |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On July 5, 2007, Joann Cortez ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Supplemental Security Income benefits. On July 24, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On July 27, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on January 9, 2008, defendant filed an Answer to the Complaint. On March 20, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

On June 28, 2001, plaintiff filed an application for Supplemental Social Security Income benefits alleging a disability onset date of April 1, 2000. (Administrative Record ["AR"] at 65-67). In her application, plaintiff claimed that, beginning on April 1, 2000, diabetes, skin cancer, and manic depression prevented her from working. (AR at 116). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 44-47, 52-55).

On October 2, 2001, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 56). On October 22, 2002, the ALJ conducted a hearing in San Bernardino, California. (AR at 271-91). On December 5, 2002, the ALJ issued her decision denying benefits. (AR at 12-15). In the decision, the ALJ concluded that plaintiff suffered from the severe impairments of depression, an anxiety-related disorder, and diabetes, but found that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (See AR at 13, 15). The ALJ concluded that plaintiff could perform her past relevant work as a bartender and that she was not an entirely credible witness. (AR at 15). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.). On or about January 3, 2003, plaintiff filed a request with the Appeals Council for review of the ALJ's decision. On March 21, 2003, the Appeals Council affirmed the ALJ's decision. (See Joint Stipulation at 2).

Plaintiff then filed a civil action in this Court, under case number EDCV 03-461-JTL. On September 3, 2003, plaintiff and the Commissioner stipulated to a remand pursuant to sentence four of 42 U.S.C. Section 405(g). (AR at 360-61; see AR at 358-59). On remand, the ALJ was instructed to reevaluate whether plaintiff could perform her past relevant work, specifically to consider the specific vocational backgrounds necessary for each of her past jobs, consider third party testimony, and, if necessary, seek supplemental vocational evidence. (AR at 361). On December 10, 2003, the Appeals Council remanded the case to the ALJ to conduct further proceedings. (See AR at 362).

On May 17, 2004, the ALJ conducted a second hearing in San Bernardino, California. (AR at 426-65). Thereafter, on July 6, 2004, the ALJ issued her decision denying benefits. (AR at 299-305; see AR at 292). In her decision, the ALJ concluded that plaintiff's obesity, diabetes, depressive disorder, not otherwise specified, and mixed personality disorder with passive aggressive and dependent features constitute a severe impairment. (AR at 300-01). According to the ALJ, however, this impairment did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 301). The ALJ also found that, based upon plaintiff's residual functional capacity, plaintiff retained the capacity to perform light work or sedentary work as a cleaner (office or hotel), small parts assembler, and production inspector. (AR at 304). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.). On August 21, 2005, the Appeals Council affirmed the ALJ's decision. (See AR at 292-94).

Petitioner then filed a civil action in this Court, under case number EDCV 05-857-JTL. On August 2, 2006, the Court remanded plaintiff's case, instructing the ALJ to provide specific and legitimate reasons supported by substantial evidence in the record to support her decision to reject plaintiff's treating physician's opinion of disability. (See AR at 501-12). On September 2, 2006, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings consistent with the Court's order. (AR at 499).

On December 12, 2006, the ALJ conducted a third hearing in San Bernardino, California. (AR at 726-61). Plaintiff appeared at the hearing with counsel and testified. (AR at 727, 728, 730-32, 753-54). Medical experts Samuel Landau, M.D., and Michael Kania, Ph.D., who reviewed plaintiff's medical records, were present for plaintiff's testimony and testified at the hearing. (See AR at 734-38, 738-58). Corinne Porter, a vocational expert, also testified at the hearing. (AR at 758-60). Thereafter, on February 26, 2007, the ALJ issued his decision denying benefits to plaintiff. (AR at 469-78). In his decision, the ALJ concluded that plaintiff's obesity, diabetes, and a disorder of the spine constitute severe impairments; plaintiff's depressive order, not otherwise specified, and post traumatic stress disorder were not severe impairments and only mildly limited plaintiff's daily activities, social function and caused mild

difficulties with concentration, persistence and pace, and there was no evidence of extended decompensation. (AR at 470). According to the ALJ, plaintiff's impairments did not meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 471). The ALJ determined that plaintiff had the residual functional capacity to perform a limited range of light work, including the occupations of mail clerk, garment ticketer and cashier. (AR at 471, 477). Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. (AR at 477).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

1. The ALJ failed to properly consider the disability opinion of Kari Enge, M.D., plaintiff's treating physician, regarding plaintiff's mental limitations.

2. The ALJ failed to properly consider the disability opinion of Imelda Alfonso, M.D., plaintiff's treating physician, regarding plaintiff's mental limitations.

3. The ALJ failed to properly consider the lay witness testimony of Velma Garza, plaintiff's sister.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r,

4

169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.      The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Parra, 481 F.3d at 746.  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity.  Id.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits.  Id.  Once this prima facie case is established by the claimant,

the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.   Kari Enge, M.D.**

Plaintiff argues that the ALJ improperly disregarded the opinion of her treating psychiatrist, Kari Enge, M.D., regarding plaintiff's mental limitations. On June 21, 2006, Dr. Enge completed a Work Capacity Evaluation (Mental) form regarding plaintiff's ability to perform work-related activities on a daily basis in a regular work setting. (AR at 724-25). In the form, Dr. Enge indicated that plaintiff had "marked" limitations[1] in her ability to maintain attention and concentration for extended periods and her ability perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AR at 725). Dr. Enge also indicated that plaintiff had "moderate" limitations[2] in seven areas, including her abilities to remember locations and work-like procedures, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (AR at 725-26).[3] Dr. Enge also indicated that plaintiff was not a malingerer, plaintiff's mental impairment had lasted or could be expected to last at least twelve (12) months, and that she expected plaintiff's mental impairments or treatment would cause plaintiff to miss three or more days of work each month. (AR at 725).

---

[1]   "Marked" is defined as "[s]erious limitations in this area. The ability to function in this area is severely limited but not precluded." (AR at 724).

[2]   "Moderate" is defined as "[m]ore than slight but less than marked." (AR at 724).

[3]   Dr. Enge also indicated that plaintiff had a "slight" limitation in seven areas: (1) ability to understand and remember very short and simple instructions; (2) ability to carry out very short and simple instructions; (3) ability to make simple work-related decisions; (4) ability to interact appropriately with the general public; (5) ability to ask simple questions or request assistance; (6) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (7) ability to be aware of normal hazards and take appropriate precautions. (AR at 725-26). "Slight" is defined as "[s]ome mild limitation in this area, but generally functions pretty well." (AR at 724).

In his decision, however, the ALJ rejected Dr. Enge's Work Capacity Evaluation (Mental), in favor of the opinion of Linda Smith, M.D., the psychiatric consultative examiner who had reviewed plaintiff's medical records, interviewed plaintiff on three occasions, in 2000, 2004 and 2005, and performed complete psychiatric evaluations of plaintiff. (AR at 476; see AR at 473, 475; see also AR at 181-86, 398-406, 611-17). Based on Dr. Smith's most recent examination of plaintiff on August 11, 2005, a review of plaintiff's psychiatric progress notes from 2003 to 2005, and her 2004 evaluation, Dr. Smith opined that plaintiff was not functionally impaired in her abilities to understand, remember or complete simple or complex commands, interact appropriately with supervisors, co-workers or the public, comply with job rules such as safety and attendance, respond to change in a normal workplace setting, and maintain persistence and pace in a normal workplace setting.[4] (AR at 611, 617).

In support of his decision to reject Dr. Enge's opinion regarding plaintiff's mental limitations, the ALJ stated:

> I have . . . considered and rejected the most recent statement of disability from Dr. Kari Enge, M.D., [AR at 724-25]. Dr. Enge saw [plaintiff] on four occasions and there is no evidence that a mental status examination was ever conducted. The sessions were for medication review and the treatment notes noted improvement and no change on two of the visits and on the other two visits [plaintiff] reported that she had not filled her medication prescription. Dr. Enge's comments are not consistent with the objective findings in the claimant's file and I give more weight to the consultative examiner, Dr. Smith who saw [plaintiff] on three occasions and on each occasion conducted a thorough review of

---

[4] Dr. Smith rendered the same functional assessment in her 2004 evaluation of plaintiff. (AR at 405-06). However, in her 2000 evaluation of plaintiff, Dr. Smith opined that plaintiff was "mildly impaired in her ability to interact appropriately with supervisors, co-workers, or the public due to some interference from depressed mood." (AR at 185).

| | |
|---|---|
| 1 | medical records, a mental status evaluation and interviewed the |
| 2 | claimant. |

(AR at 476).

Plaintiff argues that the reasons provided by the ALJ are insufficient to properly reject the opinion of Dr. Enge regarding plaintiff's mental limitations. (Joint Stipulation at 3-5, 8). Defendant argues that the ALJ properly relied on substantial evidence and Dr. Smith's opinions in determining that plaintiff had a residual functional capacity to perform light work unlimited by her mental conditions, which was not severe and caused only mild limitations. (Joint Stipulation at 5-6). Defendant cites to the opinions of (1) Michael Kania, Ph.D., a clinical psychologist who based his opinion on a review of plaintiff's medical records and testified that plaintiff had only mild mental limitations that would not impair her ability to work; (2) Dr. Smith's consultative psychiatric evaluations (AR at 475, 739-44); and (3) the state agency physicians who opined that, based on the evidence in plaintiff's file, plaintiff had no severe mental impairments. (AR at 473-74, 704-14). (Joint Stipulation at 6-7). With respect to the ALJ's rejection of Dr. Enge's opinion, defendant argues that substantial evidence supports the ALJ's decision. (Joint Stipulation at 8). Defendant argues that the ALJ properly indicated that Dr. Enge's form opinion was not based on objective medical findings and the limited visits and treatment notes failed to reveal any medical findings or explanation for the mental limitations assessed by Dr. Enge. (Joint Stipulation at 6, 8). Defendant also states that the ALJ noticed that Dr. Enge did not have a significant longitudinal view of plaintiff's condition, as she only saw plaintiff a few times and, apparently, did not perform a mental status exam. (Joint Stipulation at 8).

The medical opinion of a treating physician is entitled to special weight. 20 C.F.R. § 404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (the opinions of treating physicians should be given more weight than the opinions of doctors who do not treat the claimant). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it will be given controlling weight. 20 C.F.R. § 404.1527. A finding that a treating physician's opinion is not well supported by

medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, only means that the opinion is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p[5] ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."). The opinions rendered by treating physicians are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527, such as the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

An ALJ may properly reject the opinion of an uncontroverted treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. An ALJ may properly disregard the controverted opinion of a treating physician only by setting forth specific and legitimate reasons for doing so that are supported by substantial evidence in the record. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." Reddick, 157 F.3d at 725; Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). More than just rendering conclusions, the ALJ must set forth interpretations and explain why his interpretations, rather than the physician's, are correct. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick, 157 F.3d at 725.

In his decision, the ALJ rejected Dr. Enge's opinion as inconsistent with the objective findings in plaintiff's file. (AR at 476). As plaintiff's treating psychiatrist, Dr. Enge's opinion is entitled to special weight. See Orn, 495 F.3d at 631-34. As discussed above, in order to properly disregard the controverted opinion of Dr. Enge, the ALJ must set forth specific and legitimate reasons for doing so that are supported by substantial evidence in the record. See

---

[5] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    Connett, 340 F.3d at 874; Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ
2    may not reject the opinion of a treating physician, even if it is contradicted by the opinions of
3    other doctors, without providing specific and legitimate reasons supported by substantial
4    evidence in the record." (internal quotation marks omitted)).  The ALJ must set forth his own
5    interpretations and explain why they, rather than the doctor's were correct.  See Embrey v.
6    Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

7       Here, the ALJ failed to specify which portions of Dr. Enge's opinion are inconsistent with
8    the objective findings in plaintiff's file.  Indeed, the ALJ also fails to specify the objective findings
9    with which Dr. Enge's opinion conflicts.  Instead of providing the required detailed and thorough
10   summary of the facts and conflicting clinical evidence, and stating his interpretation thereof, the
11   ALJ concluded that because Dr. Enge's comments were inconsistent with the objective findings
12   in plaintiff's file, he determined that Dr. Smith's opinions were entitled to greater weight.  (AR
13   at 476).  The ALJ's conclusory statement does not constitute a specific and legitimate reason
14   for rejecting Dr. Enge's opinion.  See Reddick, 157 F.3d at 725 (the ALJ "must do more than
15   offer his conclusions."); Cotton, 799 F.2d at 1408.

16      Even assuming that the ALJ referred to Dr. Enge's comments that plaintiff had "marked"
17   limitations in certain areas (AR at 725), the ALJ failed to specify how Dr. Enge's comments
18   were inconsistent with the objective medical findings.  The record shows that, although Dr.
19   Smith opined that plaintiff was not functionally impaired in her ability to comply with job rules
20   such as safety and attendance (AR at 186, 405, 617), Dr. Smith reviewed Dr. Enge's treatment
21   notes from 2003 to 2005 and noted in the August 11, 2005 psychiatric examination of plaintiff
22   that "it appears [that plaintiff] frequently does not keep appointments."  (AR at 611).  Dr. Enge's
23   treatment notes indicate that plaintiff did not appear at her scheduled appointments on
24   December 29, 2003 (AR at 590 ("No show")), June 2, 2005 (AR at 579 (No show. . . .  Did not
25   know appt was today"), was "unable to wait to be seen" on April 21, 2004 (AR at 589), and
26   rescheduled her appointment on July 28, 2005.  (AR at 656).  Dr. Enge's most recent treatment
27   notes indicate that plaintiff had to reschedule her August 12, 2005 appointment because she
28   was sick (AR at 655), and failed to appear at her scheduled appointments on January 4, 2006

(AR at 721) and September 27, 2006. (AR at 717). On April 6, 2006, Dr. Enge noted that plaintiff was "not following up with appointments." (AR at 720). In rejecting Dr. Enge's opinion, the ALJ relied on the treatment notes that indicated improvement and no change on two of plaintiff's visits, and where plaintiff reported that she had not filled her medication prescription on two other visits (AR at 476). The ALJ did not discuss the treatment notes described above, which may bear on plaintiff's ability to maintain regular attendance.

With respect to plaintiff's concentration, Dr. Smith noted in her 2000 psychiatric evaluation that plaintiff "stated she could not perform serial threes and would not attempt them," plaintiff could spell "world" forwards and backwards, and was able to follow their conversation well. (AR at 184). In 2004, Dr. Smith noted that plaintiff could perform serial threes with one mistake, could spell "world" forwards and backwards, and was able to follow their conversation well. (AR at 404). In her most recent 2005 evaluation of plaintiff, Dr. Smith noted that plaintiff could perform serial threes with two mistakes, could spell "world" forwards and backwards, and could follow their conversation well. (AR at 616). At the 2006 hearing, however, Dr. Kania testified that Dr. Smith had not performed any objective tests for attention and concentration during her 2005 evaluation of plaintiff[6] and, in fact, performed no objective tests at all. (AR at 746). Dr. Kania surmised that Dr. Smith may have felt that there was no need to perform objective tests and, based on plaintiff's behavior during the interview, felt that plaintiff was able to recall events earlier in the interview and was able to focus on questions. (AR at 746; see AR at 748). Dr. Kania opined that Dr. Smith made no remarks suggesting that there was any question about plaintiff's ability to concentrate and maintain attention, and that it "appears" that Dr. Smith considered abilities in these areas to be unimpaired. (AR at 747). Although Dr.

---

[6] When asked what type of test should be administered to properly assess a person's ability to maintain attention and concentration, Dr. Kania replied:

> Well, it could be just about anything but some subscales of the Wexler might be used, the entire Wexler might be administered, some sort of task that would require the person to concentrate on something over a prolonged period of time and then respond.

(AR at 746).

Smith opined that plaintiff was not functionally impaired in her abilities to understand, remember or complete simple or complex commands or comply with job rules such as safety and attendance (AR at 617), Dr. Kania testified that Dr. Smith did not specifically address the issue of long-term attention. (AR at 750).[7]

In the Joint Stipulation, defendant cites to portions of the ALJ's decision in which the ALJ states that Dr. Kania disagreed with Dr. Enge's opinion of plaintiff's marked impairments as lacking objective support in the record, but agreed with Dr. Smith's findings that plaintiff did not have any significant impairments (AR at 475) and Dr. Kania's testimony that plaintiff had only mild mental limitations that would not impair her ability to work. (AR at 739-40). Defendant also cites to the ALJ's statement that the state agency physicians opined that plaintiff had no severe mental impairments (AR at 473-74, 704-14), and to other evidence in plaintiff's record that supported the ALJ's finding that plaintiff's mental condition was not severe. (Joint Stipulation at 6-8). However, the ALJ did not include a detailed and thorough summary of Dr. Enge's opinion, Dr. Kania's testimony or the opinions of the state agency physicians in rejecting Dr. Enge's opinion. (See AR at 476). Any attempt to justify the ALJ's rejection of Dr. Enge's opinion post hoc is not sufficient to cure the error. See Vista Hill Found. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Comm'r., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper post hoc explanations for such unexplained conclusions).

In sum, the ALJ failed to meet his burden of setting forth a detailed and thorough

---

[7] When plaintiff's counsel attempted to review with Dr. Kania all of the categories of mental impairments evaluated by Dr. Enge in the Work Capacity Evaluation (Mental), to determine whether Dr. Smith specifically addressed those categories during her evaluation of plaintiff, the ALJ interrupted counsel's questioning. (AR at 750-51). The ALJ stated, "It doesn't take medical expertise; I can tell what's on the [Work Capacity Evaluation (Mental)] form and I can see what [Dr. Smith] said, so I, I'm not going to spend any more time . . . on this aspect." (Id.).

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings. Thus, the ALJ failed to set forth specific and legitimate reasons for rejecting Dr. Enge's form opinion as inconsistent with the objective findings in plaintiff's file. See Reddick, 157 F.3d at 725 (the ALJ "must do more than offer his conclusions."); Cotton, 799 F.2d at 1408.

Moreover, even if the ALJ specifically found that Dr. Enge's opinion was not supported by objective findings, the ALJ did not attempt to re-contact the treating psychiatrist. The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings); cf. Embrey, 849 F.2d at 421 (improper to reject treating physician's opinion where he provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions). Nevertheless, an ALJ may not reject a treating physician's opinion for lacking supporting clinical data or explanation without first re-contacting the physician to determine whether such supporting clinical data exists. In particular, 20 C.F.R. Section 404.1512(e)(1), in pertinent part, states:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, <u>the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques</u>.

20 C.F.R. § 404.1512(e)(1) (emphasis added). Thus, unless an ALJ complies with his duty to re-contact the treating physician, an ALJ cannot validly cite a lack of clinical data or explanation to reject the treating physician's opinion. See Cleveland v. Apfel, 99 F. Supp. 2d 374, 380

(S.D.N.Y. 2000) (remanding case to ALJ for failure to re-contact treating physician before rejecting opinion and stating, "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, sua sponte, to develop the record further by contacting the treating physician to determine whether the required information is available"); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [the physician's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."); Corey v. Barnhart, 2002 WL 663130, at *5 (S.D. Ind. 2002) ("The ALJ discredited Dr. Ciulla's opinion because of the lack of objective findings, and there is no indication in the record that the ALJ recontacted Dr. Ciulla to find out whether he had any findings or other information to support his opinion. The ALJ's failure to do so was error."). Thus, to the extent defendant contends that Dr. Enge's assessment of plaintiff's mental limitations was not adequately supported by objective evidence, the ALJ should have re-contacted Dr. Enge to determine whether she based her assessment of marked mental limitations on any objective findings or a mental status examination. The ALJ failed to meet his duty to develop the record to determine the basis for Dr. Enge's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991) (ALJ has an independent duty to fully and fairly develop the record and assure that the plaintiff's interests are considered).

Finally, even if the ALJ found that Dr. Enge's opinion was inconsistent with other substantial evidence in the record, and substantial evidence supported Dr. Smith's opinion, such a finding means only that Dr. Enge's opinion is not entitled to "controlling weight," not that it should be rejected. SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."); Orn, 495 F.3d at 631-32. In this circumstance, Dr. Enge's opinion would still be entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527. Orn, 495 F.3d at 632. One of the many factors listed is the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i). In his decision, the ALJ suggests that his observation that Dr. Enge saw plaintiff on only four occasions constitutes a sufficient reason for rejecting Dr. Enge's opinion. (AR at 476). The

Court notes that the record shows that Dr. Enge saw plaintiff on ten occasions, not four, before Dr. Smith evaluated plaintiff on August 11, 2005.  (AR at 580-81 (April 7, 2005), 582 (January 20, 2005), 584 (December 14, 2004), 585 (September 13, 2004[8]), 586 (July 26, 2004), 587 (June 28, 2004), 588 (April 26, 2004), 591 (December 2, 2003), 598-99 (August 11, 2003), 657 (June 16, 2005)).  Furthermore, the record shows that Dr. Enge saw plaintiff on six occasions thereafter, before plaintiff's December 12, 2006 hearing.  (AR at 653 (September 29, 2005), 654 (August 18, 2005), 718 (August 16, 2006), 719 (June 21, 2006), 720 (April 6, 2006), 722 (November 23, 2005)).  Nonetheless, frequency is only one of many factors to be evaluated in determining the weight to give a treating physician's opinion that does not qualify as "controlling."  See 20 C.F.R. § 404.1527(d)(2).  Frequency of examination alone is not determinative.

While other evidence in the record may well constitute substantial evidence supporting the ALJ's disability determination, the ALJ must still provide specific and legitimate reasons for rejecting Dr. Enge's opinion.

**C.    Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate.  The ALJ failed to provide specific and legitimate reasons to support his decision to reject the disability assessment of Dr. Enge.  On remand, the ALJ must fully explain the weight that he assigns to the opinion of Dr. Enge.  If the ALJ rejects Dr. Enge's opinion, or the opinion of any other treating physician, in favor of the opinion of another physician, the ALJ must make detailed findings setting forth specific,

---

[8] On September 13, 2004, Dr. Enge noted that plaintiff was "maintaining outpatient functioning, but [it is] unlikely [that] she would be able to keep a job."  (AR at 585).

15

1 legitimate reasons for doing so based on substantial evidence in the record.[9]

### ORDER

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 25, 2008

                                          /s/
                                    JENNIFER T. LUM
                                    UNITED STATES MAGISTRATE JUDGE

---

[9] In the Joint Stipulation, plaintiff also contends that the ALJ failed to properly consider the disability opinion of plaintiff's treating physician, Imelda Alfonso, M.D., regarding plaintiff's mental limitations and the ALJ failed to properly consider the lay witness testimony of Velma Garza, plaintiff's sister. As explained above, however, the ALJ's error in failing to properly consider Dr. Enge's opinion constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.